1-18-22-63 Lifetouch Portrait Studios v. Patricia Garner Please proceed. Good morning, Your Honors. My name is Santiago Echaveste, and I am one of the attorneys for Lifetouch Portrait Studios. I'll be, I'll tear it apart. It's the model of the Lunar Port, and it's probably displayed behind me. In Latin, and it means hear the other side, and that's what I'm asking you to do today. Please hear the other side. In digging right in landscaping, the appellate court decided that the manifest way standard test is whether there's sufficient evidence in the record to support the commission's determination, and this court has not been shy about reversing the commission on manifest way, and in this case, there's simply not sufficient evidence in the records to support the commission's determination. Dr. Jones' medical records are very clear, reporting the very first complaint of the right hip was on February 24th, 2014. That's over two years after the petitioner's left hip injury on January 26th of 2012. Well, let's assume it's undisputed, but let me see if I have a remote understanding of what the claimant is saying this case is about. There's no question that she injured her left hip and had reported the left hip, correct? Correct, sir. And the theory is, is that because of the injury to the left hip, it affected her gait, it affected the way she walked. Ultimately, it caused a problem with the right hip. And the law would be, International Harvester, where the work injury causes a subsequent injury, left hip to right hip, the chain of causation is not broken, even if the work injury causes the subsequent injury or disease by aggravating a preexisting condition. So the theory is, yes, I was treated and compensated for the left hip, but because it altered the way I moved, the way I walked, my gait, it subsequently directly ended up causing a problem with the right hip. So what is wrong with that theory? Okay, so the argument is overcompensation. Right. Right? But in all the medical records that were submitted, there is no complaint of overcompensation. There is no complaint of pain with the right hip. For two years before the first complaint appears in the medical records, that petitioner was running, she had a full-time trainer at Export Fitness who was helping her with her training and exercises. She was working full-time. She went to classes so she could be certified as a monitor tech at Christ Hospital. She also acted in Zumba, and Zumba is like running, but it's jumping around and landing, and it's more, I don't know if you've ever seen it, but it's worse than running. So we're going to blame the condition on Zumba? Is that what we're going to do? I'm sorry? We're going to blame her condition on Zumba? Well, for two years, she did all of this. And Latin dance, too. Is that correct? I think of Zumba and Latin dance. Latin dance. Okay. Yes. So for two years she had no complaints, no medication. You know what? You're making a very good logical point, but let me ask you this. Does the claimant have to know day-to-day the effect of this adjustment over compensation, what it's doing to her other hip? I mean, you seem to be saying, well, she wasn't documenting on a regular basis the problems this was causing, so therefore she must lose. Well, she went to her doctors on a frequent basis, monthly, sometimes weekly. There were no complaints of her right hip during this whole time. And every single visit with Dr. Doan, there's no restrictions, no complaints about her right hip whatsoever. Until it got to a point where there was a problem. Four years later, there was an MRI that was taken on April 9, 2014. And after that MRI, Dr. Doan did not place any restrictions on her whatsoever. She had a repeat MRI of that same hip on September 27, 2015. And Dr. Doan again did not place any restrictions on her right hip. And he stated that MRI looks essentially the same. So was there any medical testimony, a causal connection given by any doctor as to connecting the right hip to the left hip? No, and especially Dr. Walsh testified that it was not connected because of the length of time. He added up the time range and said it was close enough. This is a manifest weight case. I don't know why you people get the idea in a manifest weight case there's one right answer. The commission is required to make a choice, generally between two reasonably supportable positions. Doan testified, he added in his note, the right hip pain in current condition, which necessitates surgery, were caused by the left hip injury due to compensation for her left hip pain. That was Doan's opinion. Walsh's opinion was there was no causal connection. The commission chose to credit Doan over Walsh. So why couldn't they? What's wrong with Dr. Walsh's opinion? What's wrong with that is that Doan did not make that opinion until the time of his evidence deposition. Well, so what? Did he make it or not? He made the opinion. But where was he for four years? The point of the matter is, excuse me, it was the commission that decided credibility. Now, I know you make the allegation that the arbitrator was prejudiced against Walsh for some reason. But the fact of the matter is the commission made the decision. The commission affirmed the arbitrator. They obviously credited Doan over Walsh. Now, what you've got to tell me is why is Walsh's opinion baseless? Because without that, you lose. But why is Doan's opinion baseless? Because without that, you lose. Arbitrator came and his decision said that Dr. Walsh did not look at the MRI, did not review any of that, and that's patently false if you look at Dr. Walsh's report. Well, his report does not reference that he looked at the MRI. That doesn't come until later. His report is void of any reference to having examined the MRI, is it not? He testified that he saw it. No, we understand. He testified it later. But the report doesn't reference it. Off the top of my head, I don't understand. I'm sorry. But he did say that he reviewed it and that the time gap was just too long. And arbitrator came, said, Well, Dr. Walsh is a well-known IME, and I don't think that he meant that as a compliment. And he said that when he walked into this room and he stated that at the Lentini hearing and at the hearing, it's in the evidence that shows some sort of bias against Dr. Walsh. Dr. Walsh actually did review the MRI and gave his opinion. You talked about the pen surveys. You talked about all of the things that automatically bring this forward. The petitioner did this. It's not like a 70-year-old woman. This is a 32-year-old woman who's actively running, jumping, and doing this. And she's already got a condition she was born with. So what you're really trying to say, your argument is, is that Walsh's opinion has some solid foundation to it. Is that correct? Yes, sir. Okay. And that came through in the testimony. Is that correct? Yes, sir. As opposed to documentary evidence that might have notations or whatever, right? Yes, sir. Okay. But apparently the arbitrator in the commission went with Dohm's opinion, correct? They went with Dohm's opinion. But, you know, there's been cases where the court has not found Dohm credible and has found Walsh credible. Okay. So what's that got to do with this case? Well, it's the same thing. I mean, Walsh was ---- You're asking us to do what you accused Cain of doing, and that's taking into consideration prior knowledge of Walsh's testimony and his behavior as an expert witness. You're just asking for it now in reverse. You ask us to make you some decision based on the commission having found in the past that Dohm was incredible. What I ---- Is that not the case? Well, there was a ---- No, not exactly, sir. What I'm asking you to do is to consider the fact that arbitrator Cain did not review and did not just for some reason brush away Dr. Walsh's opinion and said that he never reviewed anything. But we're not reviewing the arbitrator's decision. We're reviewing the commission's decision. And it was the commission that affirmed and adopted the findings. I think they made a mistake there. Well, making a mistake. Look, they made a mistake. Why did they make a mistake? You've got to tell us what is wrong with Dohm's opinion from the standpoint of expertise. He testified within a reasonable degree of medical certainty that there was a causal connection between the right hip or the left hip and compensation for the right hip injury. Look, on February 24th of 2012, there was no mention of the right hip and Dr. Dohm was not concerned about it. The first time he's concerned about the right hip is four years later after she's been actively reviewing all these other ---- Well, why would he be concerned if he doesn't know there's a problem? If he hadn't reported problems, why would he be treating her for a condition she never said was a problem? So then how can you go back four years later and say this was paused by overcompensating when she's been working for four years and ---- And your argument would certainly have supported the commission if the commission had decided the case based on Walsh's opinion as opposed to Dohm's. No question about that. But they didn't. And they're the ones that get to pick and choose as to which expert medical testimony they're going to credit. That's their job, not our job. We may not have decided it that way. We may have decided and said Walsh presented the better argument. But they pick. We don't. I mean, unless you can establish that the opinion of an expert is totally incompetent because it's based on wrong facts or something of that order, you can't get around the fact that ---- They're wrong medical knowledge. Yeah. Except in medical knowledge. It's their pick. I think it's kind of telling that around September 2015 or somewhere in that time frame that Dr. Dohm says his case is being litigated and that's the first time that he starts taking concern about the right of ---- That certainly would have been something that the commission could take into consideration. But evidently they didn't buy it. For whatever reason, they didn't buy it. For whatever reason, they probably didn't look closely enough at the medical records to consider what Dr. Walsh's opinions were. They just focused on what arbitrator's case of it. He didn't look at any of the records that he did. And that's probably what the commission focused on. Well, you can certainly make that argument, and you have. And obviously we'll consider it. Thank you. That's all I can ask. I'll leave it up to our committee. Thank you, counsel.  The opposite conclusion is clearly there. The opposite conclusion is not clearly there here. Just from the standpoint of what this case is not about, it's not about the accident, which I read in the brief of my opponent, that was established in the first case. It was a wrong case. Her left hip was decided in the first case. That was also found in her favor. So that's not about this case. And it's not about whether Patricia Meyers hurt her right hip. It's the accident. It was January 26, 2012. There's no question about that. It should be tested by GPI program. And this is clearly as the justices have noted, it's a form of compensation for the right hip. I think we all recognize the competing theories. How do you respond to his argument, if you choose to do so, that it's very mysterious that after she injured the left hip and was talking about it, she received no treatment and no complaints at all about the right hip for years after that. So how do you respond to that argument? The records of this case show that in February of 2014, which is two years after the accident, she noted to Dr. Doan, I am not feeling right hip pain, and I've noticed it since October or November of 2013. So to begin with, it wasn't four years. It was two years. Well, two years to when it was reported. Less than two years from when she's actually complaining she felt it. At its latest point would be October or November of 2013. That's really not that unusual given her description of what she was doing in the interim. She hurt her left hip. She's been waiting for approval for treatment for that left hip and for the trial, and that hurt. It's not too mysterious as to why she wasn't seen by the doctor between July of 2013 and February of 2014. It more or less exaggerates the time period that the case was on review and no approval was being given. She finally gets the commission's decision, which confirms the arbitrary decision on the left hip, and she should be treated. So what's the length of time from her injury until she has her left hip problem resolved through surgery? She has surgery in April of 2014. She's hurt in January of 2012. So we're talking a little over two years that she is mobile, I guess, right, to some extent? She's trying to, and continues to work. Okay, okay. In her testimony, while she's working, she's relying on her right hip because her left hip is her. This is sort of a progression of why this makes a lot of sense as to what happened to her. Okay, and then after the surgery, which she had, what, a 98% recovery or something like that? Eventually she does recover fairly well. Yeah, about 98% or whatever. Okay. So from that date of surgery until the symptoms of the right hip appear, how long is that? The right hip symptoms appear prior to what? Prior to the surgery. Yeah. They're even noted in the record prior to the surgery. February of 2014 is Dr. Jones' note that says patient complains she's actually felt his right hip complaints in October or November of 2013. And when's the surgery on the left hip? April 30, 2014. So how many months is that? Between the time, between October and April. Between, I have problems with my right hip and the surgery. The articulated complaint would be given to Bill two months prior to surgery. Okay. And then it takes her back from there several months after the surgery. She just couldn't see Dr. Jones in October or November of 2013 because no approvals were being given at that time. So she never could get back from him until February of 2014 after the result of the first surgery. Is there any medical evidence in this record to suggest that after the hip surgery and the recovery period of the surgery, that the lack of perfection in the left hip, so to speak, would over time cause a right hip issue? Well, yeah. She had 98 percent recovery roughly, right? Something like that. She had some success. Yeah. But not 100 percent. It was successful, but that was over the internal time. She wasn't having a high total pain in 2015. Okay. So who's giving the medical opinion that during this recovery period and perhaps even if there's, quote, full medical recovery, which is not 100 percent, by the way, I think, in the medical literature, that there is a potential for aggravating an opposite body part? Anything in there? Or is that included in the opinion of Dr. Doan? Are you trying to parse out the time period here? No. I'm trying to parse out the mechanics. Okay. So Dr. Doan states, he said that when the hip is injured, the mechanics of walking, sitting, standing may be altered and one may over-capacitate with the gluteus and overload the gluteus and subject it to the abnormal mechanics of range of motion such that it becomes injured itself. He said this is well documented. He says that Dr. Doan states that this was the injury on the one hip. What's the other hip? Anyway, this was a degeneration of the injury, and this is what added to the condition here. That was his theory or medical opinion on what added to the severity of the conditions. And what do you understand Walsh's theory was of no relationship? I think that Dr. Walsh's theory was that my client had a pre-existing anatomical abnormality of the insert tight fleece, and I don't think Dr. Doan actually disagrees with that. It's an overload of bone, and he said it's interesting because Dr. Walsh says that this means it's more likely for someone to develop labral pathology through repetitive motion. I don't think that actually hurts Dr. Doan's or our theory in this case. I think it just makes her more likely to injure herself just the way she did. Because of overcompensation. Because now she had to go out and walk, and right there she was having some kind of condition, and I guess it's going to make her more likely to develop labral pathology, and the right condition to actually go. So I think Dr. Walsh's theory was that this is the cause of the bone, but I actually think in a sort of a way I supported the theory of an aggravation of a pre-existing condition because he said specifically that through repetitive motion. Which would also be compensable, would it not? Yes. Okay. Do you want to respond at all to the arbitrator's treatment or argued treatment of Walsh? I don't really know what he said. He never really articulated what specifically he thought of Dr. Walsh. I don't really know what he said. It wasn't an obvious thing to me as to what was happening. So I don't really know what to say about that. Yeah. I don't know. I don't know. As for TTE, there was an issue about TTE. I think you might want to tell the TTE whether the restriction was on the left or on the right. In fact, she's warned about the TTE that if it's the left end, that was the argument that my opponent made, that all restrictions were on the left end. Well, that case was decided initially. So she's absolutely entitled to that. There's no question about that. So I don't know what else I can say.  I don't believe there are. Thank you, counsel. Counsel, you may reply. Thank you. There was testimony that the petitioner at her trial said, I had a conversation with Dr. Dohm about it as he was preparing me for my left hip. I think she was referring to her right hip. And he just suggested that I take anti-inflammatories and try not to put as much strain on it. Dr. Dohm was aware of it but didn't do anything. She was at MMI on May 18th of 2015, and he was still without any restrictions. There was no mention of the right hip. There was no right hip restriction noted. In his third report, Dr. Walsh specifically talks about the 2014 archogram, and he says, It's not likely that the labral frame seen on the patient's MRI archogram in 2014 is the source of her tenderness in that area of the rear truncator. There were no arthroscopy of the hip or the knee for pain. So there's no clear indication that the patient requires any repair. And as far as the condition, adopting the arbitrator pain is just plain and simple. So it just says the condition adopts arbitrator pain. And it's virtually saying exactly what arbitrator pain is. So I'm just asking you to consider the entire record. There was an incredible amount of time that went by and how the facts were not considered. Even at the commission level, it seemed like they were not considered at all. So I'm asking you to please consider that. Thank you for your time. Well, thank you, counsel, both for your arguments in this matter. It will be taken under advisement. Written disposition shall issue.